**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JUNNE KYOO KOH** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-16-932-M** |
| | ) |
| **WARDEN BERKEBILE,** | ) |
| | ) |
| **Respondent.** | ) |

## REPORT AND RECOMMENDATION

Junne Kyoo Koh, a federal prisoner appearing pro se, has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241. *See* Am. Pet. (Doc. No. 8) at 1-4 (filed Feb. 17, 2017).[1] United States District Judge Vicki Miles-LaGrange has referred Petitioner's case to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. The undersigned has examined the Amended Petition and recommends that it be dismissed without prejudice.

## STANDARD OF REVIEW

The Court is required to promptly review habeas petitions and to dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." R. Governing § 2254 Cases in U.S. Dist. Cts. ("Section 2254 Rules"), R. 4; *see also Boutwell v. Keating*, 399 F.3d 1203, 1210-11 & n.2 (10th Cir. 2005) (noting that district court may apply Section 2254 Rules to petitions filed

---

[1] References to filings in this Court use the page numbers assigned by CM/ECF. When quoting from Petitioner's filings, the undersigned has occasionally corrected capitalization, punctuation, and unambiguous abbreviations and spelling errors to improve readability.

under 28 U.S.C. § 2241).  In appropriate circumstances, the reviewing court also "'may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" *Williams v. Slater*, 317 F. App'x 723, 725 n.2 (10th Cir. 2008) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).  Here, the undersigned has considered the allegations and exhibits in the Amended Petition and takes judicial notice of public records, as cited below, in Petitioner's underlying criminal case.

## BACKGROUND

Petitioner filed his initial § 2241 petition in the U.S. District Court for the Western District of Oklahoma while he was detained at the Federal Transfer Center in Oklahoma City.[2]  *See* Pet. (Doc. No. 1) at 1-3.  Petitioner is currently serving 60 months' imprisonment after being convicted of two counts of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g), and one count of illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a).  *See* J. as to Junne Kyoo Koh (Doc. No. 88) at 1-2, *United States v. Koh*, No. 2:15-cr-98 (W.D. Wash. Mar. 17, 2016).

Petitioner, who is not a United States citizen, alleges that the United States Bureau of Prisons (BOP) "discriminates between U.S. citizens and non-citizens even though the Equal Protection Clause of the Fourteenth Amendment requires that all persons who are

---

[2] Petitioner is currently incarcerated at a private facility in Mississippi.  Am. Pet. at 1, 4. However, "jurisdiction attaches on the initial filing for habeas relief, and is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).  Accordingly, this Court retains jurisdiction over Petitioner's habeas action.

similarly situated be treated alike."[3]  Am. Pet. at 1-2.  Specifically, Petitioner alleges that

the BOP "exclude[s] all non-U.S. citizen inmates like Petitioner":

> (1) from participating in a one year sentence reduction upon completion of the Residential Drug Abuse Program (RDAP); (2) from participating in a Residential Reentry Center (RRC) commonly known as a halfway house 12 months prior to the expiration of our sentence; (3) from being transferred to a facility closer to our family living in the United States; and (4) from being placed in a minimum security prison commonly known as a camp.  Non-citizen inmates are housed in a prison with a security level of no less than Low. . . . Moreover, we are not housed in a Low security prison operated by the BOP.  We are always housed in one of [the] low security private prisons in southern states far away from our famil[ies] where the condition[s] and treatment are much worse than federal or state prisons.

Id. at 2 (emphasis omitted).[4]  Petitioner asks the Court "to direct the Bureau to transfer him

---

[3] The Fourteenth Amendment's Equal Protection Clause applies by its terms to the States, not to the federal government.  See U.S. Const. amend. XIV; Bolling v. Sharpe, 347 U.S. 497, 499 (1954).  However, the U.S. Supreme Court has long interpreted the Due Process Clause of the Fifth Amendment, which does apply to the federal government, to include an equal protection component prohibiting "discrimination that is so unjustifiable" that it constitutes a denial of due process. Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975) (internal quotation marks omitted).  "Th[e] Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."  Id. (collecting cases).

[4] These allegations mirror several provisions in BOP Program Statement P5100.08, which governs federal inmates' security designations, custody classifications, and transfers within the BOP system.  See U.S. Dep't of Justice, Fed. Bureau of Prisons, P5100.08, Inmate Security Designation and Custody Classification (2006), https://www.bop.gov/policy/progstat/5100_008.pdf.  For example, the Program Statement provides that "[i]nmates with an Order for Deportation, an Order of Removal, an ICE detainer for unadjudicated offense(s) or an ICE detainer for a hearing will not be transferred" to a facility "closer to their legal residence or release destination" because such inmates "will be returning to the community outside, rather than inside, the United States upon release." Id. at ch. 7, p. 4.  The Program Statement also prescribes that all "deportable aliens" "shall be housed in at least a Low security level institution," id. at ch. 5, p. 9, which means that they generally are not eligible for "Community" level placement at a halfway house. See id. at ch. 1, p. 2, ch. 2, pp. 1, 5, 12-13.  The term "deportable alien" generally refers to any "inmate who is not a citizen of the United States." Id. at ch. 5, p. 9.

to a minimum security prison (camp) closer to his family" and to prohibit the "exclusion of non-U.S. citizen inmates from participating in a[n] RDAP or RCC" program. *Id.* at 3-4.

## ANALYSIS

Liberally construed, Petitioner's Amended Petition presents three separate claims: (1) that his status as a noncitizen subjects him to less favorable conditions of confinement because he is not eligible for placement at a minimum security facility or a facility near his family; (2) that his status as a noncitizen subjects him to a longer term of imprisonment because he is not eligible for "a one-year sentence reduction" if he completes Residential Drug Abuse Program ("RDAP") treatment; and (3) that his status as a noncitizen subjects him to a longer term of imprisonment because he is not eligible for transfer to a community correctional facility such as a halfway house. *See* Am. Pet. at 2-4. Petitioner asserts that these "unfair treatments" violate the constitutional guarantee of equal protection. *Id.* at 4.[5]

---

[5] Petitioner also asserts that "[t]he BOP separates non-U.S. citizen inmates like petitioner from U.S. citizen inmates merely on the ground that we are deportable although we are not." Am. Pet. at 2. He elaborates that "[t]he BOP does not consider whether we are legal immigrants having a green card or not" or "whether we are non-deportable immigrants such as Cubans or North Koreans." *Id.* To the extent that Petitioner intended to assert an equal protection claim based on the BOP's treatment of aliens legally present in the United States, or of aliens who are illegally present but "nondeportable" for other reasons, such claim should be dismissed for lack of standing because Petitioner does not fall into either of these categories. *See Whitmore v. Arkansas*, 495 U.S. 149, 166 (1990); 28 U.S.C. §§ 2241(c)(3), 2242. Petitioner is a citizen of the Republic of Korea (sometimes referred to as "South Korea") who, at the time of his arrest and conviction, "was an alien illegally and unlawfully present in the United States with no status or pending applications to enter the United States." Stipulated Facts (Doc. No. 61) at 3, *United States v. Koh*, No. 2:15-cr-98 (W.D. Wash. Nov. 20, 2015); *see also* Indictment (Doc. No. 10) at 2, *United States v. Koh*, No. 2:15-cr-98 (W.D. Wash. Apr. 1, 2015); J. as to Junne Kyoo Koh at 1, *United States v. Koh*, No. 2:15-cr-98 (W.D. Wash. Mar. 17, 2016).

*A.  Security Level and Place of Confinement*

The "BOP has the authority to designate where an inmate will be imprisoned and to direct his or her transfer to another facility," taking into account the inmate's characteristics and certain policy considerations.  *Garza v. Davis*, 596 F.3d 1198, 1201 (10th Cir. 2010) (citing 18 U.S.C. § 3621(b)).  Plaintiff complains that in exercising this discretion the BOP improperly discriminates against noncitizen inmates by disqualifying them from anything less restrictive than "Low" security level facilities and by ignoring the location of the inmates' families.  *See* Am. Pet. at 2-3; *see also* BOP Program Statement P5100.08 at ch. 5, p. 9 (stating that an "inmate who is not a citizen of the United States" generally must "be housed in at least a Low security level institution" regardless of whether he or she otherwise would be eligible for placement in a less-restrictive environment); *United States v. Acevedo*, 7 F. App'x 850, 851 (10th Cir. 2001) ("Because he is not a United States citizen, Mr. Acevedo is subject to deportation upon his release from prison.  As a result of his deportation status, Mr. Acevedo is ineligible for confinement in a minimum security prison . . . .").  Neither of these grounds presents a cognizable habeas claim.

"A habeas corpus proceeding attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (internal quotation marks omitted).  To state a claim for relief, the prisoner must show that he or she "is in custody in violation of the Constitution or laws . . . of the United States," 28 U.S.C. § 2241(c)(3).  Claims that challenge the prisoner's conditions of confinement within the custody of the BOP, but do not attack the BOP's "underlying authority . . . to hold him in

custody," are not cognizable in habeas corpus. *Palma-Salazar v. Davis*, 677 F.3d 1031, 1036 (10th Cir. 2012). Such claims may be brought in a civil action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Palma-Salazar*, 677 F.3d at 1038.

As relates to the claim at issue, Petitioner's allegations and requested relief—that the Court "direct the [BOP] to transfer [Petitioner] to a minimum security prison (camp) closer to his family," Am. Pet. at 2-3—show that he is challenging the conditions of his confinement rather than the fact or duration of that confinement. Such a claim may be properly brought through a *Bivens* action but does not support habeas relief under 28 U.S.C. § 2241. *See Palma-Salazar*, 677 F.3d at 1038. Thus, whatever the merits of Petitioner's argument that his alienage should not determine "his placement within the federal prison system," *id.* at 1036, the Court lacks jurisdiction to consider that claim in this habeas proceeding. *See id.* at 1038-39. Petitioner's first claim should be dismissed without prejudice.

B.      *Denial of RDAP Early Release to Noncitizen Inmates*

"Congress has provided, in 18 U.S.C. § 3621(e)(2)(B), that the [BOP] . . . may reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the prisoner successfully completes a substance abuse program." *Lopez v. Davis*, 531 U.S. 230, 232 (2001) (discussing § 3621(e)(1)'s mandate that the BOP "provide residential substance abuse treatment" to qualifying prisoners). Petitioner complains that eligibility for early release under this program—known as RDAP—is refused to noncitizens like himself, resulting in their serving longer terms of imprisonment. *See* Am. Pet. at 3.

Petitioner, however, has no standing to assert such a claim because he would not be eligible for RDAP early release even if he were a citizen.

Article III of the United States Constitution authorizes federal courts to resolve "definite and concrete" disputes "touching the legal relations of parties having adverse legal interests" and "admit[ting] of specific relief through a decree of a conclusive character." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted); *accord Whitmore*, 495 U.S. at 162, 164-65 (discussing Article III standing to petition a federal court for a writ of habeas corpus on behalf of another person). To establish standing, Petitioner must allege facts that, accepted as true, show he has suffered an injury in fact that is both fairly traceable to Respondent's challenged policy and likely to be redressed by a favorable decision in this case. *See Pinson v. Berkebile*, 486 F. App'x 745, 746-47 (10th Cir. 2012) (citing *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012)).

As noted, Petitioner is serving a term of imprisonment on his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* J. as to Junne Kyoo Koh at 1, *United States v. Koh*, No. 2:15-cr-98 (W.D. Wash. Mar. 17, 2016). Consistent with the 18 U.S.C. § 3621(e)'s language restricting early-release eligibility to "nonviolent felony" offenses, a federal regulation "categorically denies early release to prisoners whose current offense is a felony attended by 'the carrying, possession, or use of a firearm.'" *Lopez*, 531 U.S. at 232-33 (quoting the current 28 C.F.R. § 550.55(b)(5)(ii)). This includes convictions for being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1).[6] *Martin v. Rios*, 472 F.3d 1206, 1207 (10th Cir. 2007).

Therefore, regardless of his citizenship, Petitioner "would not be eligible for a sentence reduction even if he were to successfully complete the RDAP." *Pinson*, 486 F. App'x at 746; *Martin*, 472 F.3d at 1206-07 (noting that the BOP may exclude inmates whose offenses "involved mere possession of a firearm," including violations of 18 U.S.C. § 922(g)(1), from consideration for a sentence reduction under 18 U.S.C. § 3621 (citing *Lopez*, 531 U.S. at 240)). "As a result, [P]etitioner has suffered no injury fairly traceable to a BOP policy" denying noncitizen "prisoners the opportunity for sentence reductions under § 3621(e)." *Pinson*, 486 F. App'x at 747 (finding a lack of standing where a federal prisoner challenged a BOP policy excluding all prisoners incarcerated at a maximum-security prison from participation in the RDAP sentence-reduction program because the prisoner had a felony conviction for a crime that categorically excluded him from early-release eligibility). "Nor would a decision striking down such a policy" on equal-protection grounds "help him in any way. [Petitioner] therefore lacks standing to challenge it." *Id.* (citing *Turner*, 681 F.3d at 1218). This claim should be dismissed without prejudice.

C.    *Denial of Community Confinement to Noncitizen Inmates*

Congress also has provided that the BOP "shall, to the extent practicable, ensure

---

[6] The regulation also categorically denies early release to "Immigration and Customs Enforcement detainees" even if they successfully complete RDAP treatment during their term of imprisonment. 28 C.F.R. § 550.55(b)(1); *see also Acevedo*, 7 F. App'x at 851; *Dieguez v. United States*, No. CIV-15-857-M, 2015 WL 5770011, at *3 (W.D. Okla. Aug. 27, 2015) (R. & R.), *adopted*, 2015 WL 5770004 (W.D. Okla. Sept. 30, 2015). Petitioner concedes that there is "a detainer in place against him." Am. Pet. at 3.

that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for" his or her "reentry . . . into the community." 18 U.S.C. § 3624(c)(1). "Such conditions may include a community correctional facility," *id.*, such as a residential reentry center or halfway house, *Garza*, 596 F.3d at 1202 & n.3. "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. [§] 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful integration into the community . . . ." 28 C.F.R. § 570.22. Petitioner complains that noncitizens like himself are categorically denied placement at community correctional facilities, resulting in their serving longer terms of imprisonment. *See* Am. Pet. at 3; *see also Tamayo*, 162 F. App'x at 816; *Acevedo*, 7 F. App'x at 851.

Petitioner does not allege that he personally has been denied consideration for transfer to a halfway house or other community correctional facility. *See* Am. Pet. at 1-4. Nevertheless, the undersigned accepts that Petitioner has standing under Article III to challenge the BOP's policy in this regard. Federal courts have recognized that a federal prisoner's status as a "deportable alien" renders the prisoner "almost certainly ineligible for the benefits" of prerelease custody in a community correctional facility under 18 U.S.C. § 3624(c). *E.g.*, *United States v. Smith*, 27 F.3d 649, 654 (D.C. Cir. 1994) ("Bureau of Prisons regulations bar non-U.S. citizens from assignment to a Community Corrections Center except in what appear to be rare circumstances."); *Lizarraga-Lopez v. United States*, 89 F. Supp. 2d 1166, 1169 (S.D. Cal. 2000) (noting that "deportable aliens" are not

"eligible for community confinement under 18 U.S.C. § 3624(c)" (citing *United States v. Charry Cubillos*, 91 F.3d 1342, 1345 (9th Cir. 1996))).  Petitioner alleges that he is not a citizen of the United States and that there is "a detainer in place against him."  Am. Pet. at 1, 3.  These allegations support a reasonable inference that Petitioner is a "deportable alien," whose status as such renders him ineligible for placement in a community correctional facility, and are sufficient to establish Petitioner's standing to challenge the denial of such placement on equal protection grounds.  *Cf. Tamayo*, 162 F. App'x at 814-15, 816 (taking a "quick look at the merits" of federal prisoner's "equal protection challenge based on the fact that his status as a deportable alien" disqualifies him from "certain programs that citizen prisoners may be entitled to, such as . . . spending a portion of his sentence in a halfway house").

Regardless, Petitioner's claim fails on the merits.  "Equal protection is essentially a direction that all persons similarly situated should be treated alike."  *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (internal quotation marks omitted).  But "the federal government can treat aliens differently from citizens so long as the difference in treatment has a rational basis."  *Soskind v. Reinerston*, 353 F.3d 1242, 1254 (10th Cir. 2004) (citing *Mathews v. Diaz*, 426 U.S. 67, 78-83 (1976)).  "The courts that have considered claims similar to [Petitioner's] have reasoned that denying deportable aliens the opportunity to participate in certain pre-release programs," including those that allow the prisoner to serve a portion of his prison sentence in a community correctional facility, "does not violate equal protection" principles.  *Tamayo*, 162 F. App'x at 816 (citing *Lizarraga-Lopez*, 89 F. Supp. 2d at 1169).  For example, the Tenth Circuit has explained that "there is a rational

basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement." *Id.* The undersigned finds this reasoning persuasive. *See Lonski v. United States*, 447 F. App'x 871, 872-73 (10th Cir. 2011). Accordingly, this claim should be dismissed because Petitioner has failed to state an equal-protection violation.[7]

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Amended Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. No. 8) be dismissed without prejudice.

## NOTICE OF RIGHT TO OBJECT

Petitioner is advised of his right to file an objection to the Report and Recommendation with the Clerk of this Court by June 22, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to timely object to this Report and Recommendation waives the right to appellate

---

[7] Moreover, although Petitioner argues that denial of transfer to a community correctional facility pursuant to 18 U.S.C. § 3624(c)(1) results in noncitizen prisoners serving *longer* sentences than citizen prisoners who are granted such a transfer, prerelease custody is a type of detention not release. *See* 18 U.S.C. § 3621(b). This raises a significant question as to whether Petitioner's third claim is, like his first claim, a challenge to conditions of confinement not its fact or duration. *See* supra. In evaluating Petitioner's claim, the undersigned has assumed without deciding that Petitioner is challenging the execution of his sentence in a way that implicates 28 U.S.C. § 2241. *See Palma-Salazar*, 677 F.3d at 1036-37 (declining to consider petitioner's "conclusory assertion" that a "prisoner who challenges a prison designation or transfer that is *not* a garden variety designation or transfer" to a traditional penal institution should be allowed to proceed under 28 U.S.C. § 2241); *Lonski*, 447 F. App'x at 871 (referencing "access to programs" available in community confinement).

review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 1st day of June, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE